**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
--------------------------------------------------------X

UNITED STATES OF AMERICA,

                                                     **MEMORANDUM ORDER**

                   *-against-*                                    2:25-MJ-00144 (LGD)

JOSEPH GAROFALO,

                                  *Defendant.*

--------------------------------------------------------X

**WICKS,** Magistrate Judge:

       On April 18, 2025, the Government filed a Criminal Complaint alleging Defendant engaged in "sextortion" of minor children in violation of 18 U.S.C. § 2251 (ECF No. 1). On that same day, the FBI executed a premise search warrant and ultimately Defendant was arrested and arraigned before the Hon. Lee G. Dunst (ECF No. 3). Following the arraignment on the Complaint, Judge Dunst entered an Order of Permanent Detention. (ECF No. 4). Before the Court at this time is an application by Defendant for release on bail. For the following reasons, the application is **DENIED**, and the Permanent Order of Detention issued by Judge Dunst remains in place and in force.

### THE LEGAL FRAMEWORK

       The Constitution clearly provides that "[ e ]xcessive bail shall not be required." U.S. Const. amend. VIII. The Eighth Amendment however does not create a *right* to bail, but only cautions that bail should not be "excessive in those cases where it is proper to grant bail." *United States v.*

*Salerno*, 481 U.S. 739, 754 (1987) (quoting *Carlson v. Landon*, 342 U.S. 524, 536-37 (1952)). Under the Bail Reform Act, a court must order pre-trial release of a defendant on a personal recognizance bond if such release will "reasonably assure the appearance of the [defendant] as required and will not endanger the safety of any other person or the community." 18 U.S.C. § 3142(b). Thus, if no condition or combination of conditions would reasonably assure that the Defendant will not flee or will not endanger others, the Court must order detention. *Id.*

The Court undertakes a two-step inquiry when considering an application for bail. *See* 18 U.S.C. § 3142(e). First, the Court must determine whether the Government has established the defendant presents a danger to the community or a risk of flight.[1] *See* 18 U.S.C. § 3142(e). "Defendants pose a danger to the community not only when they commit acts of violence, but also when it is likely they will commit non-violent acts that are detrimental to the community." *United States v. Maratea*, 18- CR-337-5, 2018 WL 11191537, at \*3 (E.D.N.Y. Nov. 20, 2018); *see also United States v. Millan*, 4 F.3d 1038, 1048 (2d Cir. 1993). The Government must support a finding of dangerousness by clear and convincing evidence, *see United States v. Ferranti*, 66 F.3d 540, 542 (2d Cir. 1995), and a finding of risk of flight by a preponderance of the evidence, *see United States v. Jackson,* 823 F.2d 4, 5 (2d Cir. 1987).

Next, if the Government satisfies that burden, the Court must then determine whether no condition or combination thereof would reasonably assure that Defendant will not flee or pose a danger. *See United States v. Sabhnani*, 493 F.3d 63, 75 (2d Cir. 2007). The Court must consider the following factors in undertaking this analysis: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the person; (3) the history and characteristics of the person; and (4) the nature and seriousness of the danger to any person in the community that

---

[1] During the bail hearing before the undersigned on May 6, 2025, the United States noted that the Government is proceeding on danger to the community, rather than risk of flight.

2

would be posed by the person's release. *See* 18 U.S.C. § 3142(g); *United States v. Mercedes*, 254 F.3d 433, 436 (2d Cir. 2001).

In cases where there are crimes alleging violations of sexual exploitation of minors in violation of 18 U.S.C. § 2251, a rebuttable presumption of dangerousness and risk of flight arises. 18 U.S.C. §§ 3142(e)(3)(D)-(E). Applying that presumption, the Court must initially assume "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community." *Id*. at § 3142(e)(3). A defendant in those cases "bears a limited burden of production-not a burden of persuasion-to rebut that presumption by coming forward with evidence that he does not pose a danger to the community or a risk of flight." *Mercedes*, 254 F.3d at 436. If a defendant satisfies the burden of production, "the presumption favoring detention does not disappear entirely, but remains a factor to be considered among those weighed by the district court." *Id*.  However, "[e]ven in a presumption case, the government retains the ultimate burden of persuasion by clear and convincing evidence that the defendant presents a danger to the community," and "by the lesser standard of a preponderance of the evidence that the defendant presents a risk of flight." *Id.*

## DISCUSSION

### *Defendant's Application for Release*

During Defendant's bail hearing on May 6, 2025, counsel for Defendant requested bail with various proposed conditions. In sum, Defendant's parents, grandparents, and aunt, were all willing to act as suretors and pledge their individual homes as collateral for Defendant's bail, amounting to roughly $1,550,000 in total equity. Additionally, Defendant would agree to home detention in his parent's home with no internet or Wi-Fi service, no cellphone usage, and no contact or involvement with the children whom he used to coach. Additionally, his sisters would

relocate and live with other relatives in the interim.  Defendant would additionally submit to weekly counseling. The Pretrial Services Officer present at the hearing stated that one of the conditions—cutting off Wi-Fi services—would completely interfere with monitoring Defendant's activities through an ankle bracelet, and that oversight to ensure no internet access to Defendant would be extremely difficult if it could be done at all. Though a generous bail package, it falls short on providing a condition or set of conditions that would ensure the safety of the community.  The Court is unconvinced these conditions offered are sufficient to serve to assure that the serious potential dangers Defendant's actions pose to the community will not materialize.

***The Nature and Circumstances of the Offense and Weight of the Evidence***

The allegations within the Complaint, coupled with the further support of the material proffered by the Government, demonstrate that Defendant faces serious charges that give rise to the statutory presumption.[2] As then-District Judge Joseph Bianco observed:

> The reason for this presumption is clear. "No one questions that child pornography is an insidious offense since it takes advantage of a particularly vulnerable segment of society, children." United States v. Schenberger, 498 F.Supp.2d 738, 742 (D.N.J. 2007) (citing United States v. MacEwan, 445 F.3d 237, 250 (3d Cir. 2006)). As the Third Circuit has pointed out in connection with Congress's findings on Section 2251, which the court viewed as closely related to Section 2252A, "Congress found little distinction in the harm caused by a pedophile, be he a distributor or mere consumer in child pornography, because the mere 'existence of and traffic in child pornographic images creates the potential for many types of harm in the community and presents a clear and present danger to all children.'" MacEwan, 445 F.3d at 250 (citing the Child Pornography Prevention Act of 2006, Pub. L. No. 104–208 § 121, 110 Stat. at 3009, 3009–27 (1996)).

*United States v. Valerio,* 9 F. Supp. 3d 283, 289 (E.D.N.Y. 2014).

---

[2] Both parties conceded during Defendant's bail hearing on May 6, 2025 that this is a presumption case.

Here, based on the available information at this juncture, it appears that persuasive evidence supports the allegations of Defendant's sexually predatory conduct on minors. The evidence adduced via proffer suggests that he preyed on multiple male minors to entice them to produce nude photographs -- which constituted child pornography – and refused to delete them unless the victims supplied nude photos of other minor friends. The Government proffered that at this stage, they have only started to review evidence from one of four phones seized as a result of the warrant which alone reveal at least 30 victims.

*The History and Characteristics of Defendant*

 Part of the showing made by Defendant does suggest strong family ties. His parents, grandparents, and aunt were willing to act as suretors by pledging their homes, totaling a combined equity exceeding one million dollars. The grandparents were willing to house Defendant's sisters as part of the release package. Moreover, all of these family members were present in the courthouse for Defendant's hearing and expressed their continued support during the proceedings. Defendant's employment history is unremarkable. However, given the circumstances of this case, such evidence is insufficient to remediate or overcome the serious risk of dangers presented by Defendant. *United States v. Savader*, 944 F. Supp. 2d 209, 215 (E.D.N.Y. 2013) ("Because of the unique circumstances of this case, I find that this [community and family] support, though an important consideration, cannot overcome the serious risk of danger to the victims.").

*The Nature and Seriousness of the Danger to the Community*

Considering the factual allegations, including the number and known relations, assuring the safety of the community is paramount in this Court's view. Although there is no precise method or formula used to calculate a reasonable assurance of the community's safety, a candid

analysis of the risks begins with an examination of the nature of the potential harm. As the

Supreme Court has observed, "[c]hild pornography harms and debases the most defenseless of

our citizens." *United States v. Williams*, 553 U.S. 285, 307 (2008). Possession alone of child

pornography – which appears well-established in this case based on the information proffered –

presents serious (even if not irremediable) concerns:

> The ease with which a person can access and distribute child pornography from his
> home—often with no more effort than a few clicks on a computer—may make it easier
> for perpetrators to delude themselves that their conduct is not deviant or harmful. But
> technological advances that facilitate child pornography crimes no more mitigate the real
> harm caused by these crimes than do technological advances making it easier to
> perpetrate fraud, traffic drugs, or even engage in acts of terrorism—all at a distance from
> victims—mitigate those crimes.

*United States v. Reingold*, 731 F.3d 204, 216–17 (2d Cir. 2013) ("[W]e cannot view the

distribution of child pornography, however accomplished, as anything but a serious crime that

threatens real, and frequently violent, harm to vulnerable victims"). Like in *Valerio*, which

involved alleged sexual abuse of children both physically and through the deployment of remote

electronic communications, there is "an extreme danger to children and the community

generally" posed. 9 F Supp. 3d at 289.

Here, Defendant has previously admitted to FBI agents upon arrest that he has an

"addiction" to the type of troubling behavior at issue here and, as such, has been unable to stop.

He has engaged in this behavior since he was fifteen years old and, despite getting older, his

victims remain in the same age range—between twelve and sixteen years old. At this juncture,

the Government has already identified 30 victims after merely searching 1/3 of one of the four

phones discovered in Defendant's possession—two of which were hidden in Defendant's room.

While most of the already identified victims are located in Long Island, Defendant's conduct

spans into neighboring states including, for example, a child in Pennsylvania. *Au fond,* there is

no telling how many victims will appear during the Government's continued investigation of all of these devices, where these victims are located, or whether Defendant's behavior would cease moving forward.  For now, 30 minor victims have been identified.

Based upon the foregoing, the Court finds that there is no condition or combination of conditions that will reasonably assure the safety of the community and the appearance of Defendant as required. *See* 18 U.S.C. § 3142(e)(l). "While the Court has no reason to doubt the intentions of Defendant's family and friends who are willing to act as sureties, their influence does not outweigh the danger Defendant's release would pose to the community. Nor do Defendant's proposed sureties or any possible electronic monitoring condition mitigate Defendant's incentive to flee, given the significant penalties he faces." *United States v. McKenzie,* 23-CR-500(WFK) (E.D.N.Y. May 22, 2024). Accordingly, the Court denies Defendant's application for bail.

## CONCLUSION

For the foregoing reasons, the application for bail is hereby denied, and the Permanent Order of Detention entered by Judge Dunst on April 18, 2025 (ECF No. 4) remains in effect.

Dated: Central Islip, New York
       May 6, 2025

S O  O R D E R E D:

/S/ *James M. Wicks*

JAMES M. WICKS
United States Magistrate Judge
